UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

OUIEDO S.L.,

             Petitioner,

    v.

WARDEN OF THE MESA VERDE
DETENTION FACILITY, et al.,

             Respondents.

No. 1:26-cv-01415-TLN-CKD

**ORDER**

This matter is before the Court on Petitioner Ouiedo S.L.'s ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.) On February 20, 2026, the Court ordered Respondents to respond to Petitioner's request for immediate injunctive relief. (ECF No. 4.) Respondents were directed to inform the Court whether Respondents requested entry of final judgment on the habeas petition if the Court was inclined to grant preliminary relief. (*Id.*) On February 24, 2026, Respondents filed a consolidated Motion to Dismiss, Response to Petition for Writ of Habeas Corpus, Opposition to Preliminary Injunction, and Opposition to Temporary Restraining Order. (ECF No. 7.) The Court understands this filing to be the response Respondents were ordered to file. (ECF No. 4.) Petitioner did not file reply. For the reasons set forth below, Petitioner's habeas petition is GRANTED. (ECF No. 1.)

///

///

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

Petitioner is a noncitizen who entered the United States on an unknown date.  (ECF No. 1 at 4; ECF No. 7 at 1.)  The record indicates Petitioner was encountered by immigration authorities.  (ECF No. 7 at 2.)  He was eventually released in the discretion of the Department of Homeland Security ("DHS").  (*Id.*)  Petitioner was enrolled in the Intensive Supervision Appearance Program ("ISAP") and using SmartLink.  (ECF No. 1 at 5.)  Petitioner submits that he was "up to date with the SmartLink."  (*Id.*)

On January 29, 2026, Petitioner attended an ISAP appointment.  (*Id.*)  After waiting at the ISAP office for an hour, he was called to speak with his officer.  (*Id.*)  Petitioner was told to go to a room where Immigration and Customs Enforcement ("ICE") agents were waiting behind a door.  (*Id.*)  ICE agents detained Petitioner without providing a reason.  (*Id.*)  They placed shackles on his feet and waist.  (*Id.*)  Eventually Petitioner was moved from Maryland to California.  (*Id.* at 6.)  He is currently detained at the Mesa Verde Detention Facility in Bakersfield.  (*Id.* at 1, 6.)

Petitioner has not been provided a bond hearing before a neutral decisionmaker to determine whether his detention is justified.  (*Id.* at 5.)  Petitioner maintains that he is not a criminal, and his family depends on him.  (*Id.* at 6.)

On February 17, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus.  (*Id.* at 1.)  Petitioner challenges the lawfulness of his civil detention and seeks immediate release.  (*Id.* at 16–17.)

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure

---

[1]    The Court's February 20, 2026 order required that any opposition filed by Respondents include "all referenced and relevant portions of Petitioner's A-File and any and all available records related to Petitioner's allegations."  (ECF No. 4 at 1–2.)  Respondents did not comply with this directive and instead filed a response with no documents and few facts.  (*See generally* ECF No. 7.)

release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### III.    ANALYSIS

Petitioner claims his detention violates the Due Process Clause.  (ECF No. 1 at 16–17.)  In opposition, Respondents contend Petitioner is an "applicant for admission," subject to the mandatory detention scheme of 8 U.S.C. § 1225(b)(2)(A) ("§ 1225(b)(2)").  (ECF No. 7 at 1–2.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent.").  These due process rights extend to immigration proceedings, including detention and deportation proceedings.  *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

#### A.    Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects."

3

*Zadvydas*, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025).

Here, the Court finds Petitioner has a protected liberty interest in his continued freedom. After encountering immigration authorities, Petitioner was released at the discretion of DHS and enrolled in ISAP. Under *Morrissey*, this release was an implied promise that Petitioner would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release. 408 U.S. at 482. Petitioner submits that he was up to date with SmartLink and is not a criminal. Respondents do not dispute this or claim Petitioner was detained for violating the conditions of his release. (*See generally* ECF No. 7.) For these reasons, the Court finds Petitioner has a clear liberty interest in his continued freedom protected by the Fifth Amendment. *See Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025) ("Accordingly, a noncitizen release from custody pending immigration proceedings has a protected liberty interest in remaining out of custody.").

The Court is not persuaded by Respondents' argument that Petitioner is an "applicant for admission" subject to mandatory detention under § 1225(b)(2). (ECF No. 7 at 1–2.) Courts throughout the Ninth Circuit, including this one, have repeatedly rejected Respondents' argument on the applicability of § 1225(b)(2). *See e.g.*, *Hortua v. Chestnut, et al.*, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 at *3(E.D. Cal. Dec. 9, 2025); *Armando Modesto Estrada-Samayoa v. Orestes Cruz, et al.*, No. 1:25-CV-01565-EFB, 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases). "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at

*8 (N.D. Cal. Sept. 12, 2025) (collecting cases).  In comparison, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases).  Respondents put forth no new arguments or facts justifying reconsideration in this case.

Petitioner therefore has a liberty interest in his release from immigration detention protected by the Due Process Clause.

### B.    Process Required

Having found Petitioner possesses a protected liberty interest, the Court next examines what process is necessary to ensure any deprivation of that interest accords with the Constitution. The Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).  As set forth below, the *Mathews* factors support Petitioner's constitutional right to notice and a hearing before a neutral decisionmaker prior to re-detention.

First, as explained above, Petitioner has a substantial private interest in remaining free from detention.  The time Petitioner spent in the United States after he was released by DHS creates a power private interest in his continued liberty.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty.")

Second, the risk of erroneous deprivation of that liberty interest is considerable.  "Civil

immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025).  As Petitioner has received virtually no procedural safeguards such as a bond or custody redetermination hearing and represents that he is not a criminal and was up to date with SmartLink, the risk that he is being detained without justification is exceedingly high.  *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Third, the government's interest in detaining Petitioner without a hearing before a neutral decisionmaker is negligible.  Custody hearings in immigration court are "routine and impose a 'minimal' cost," and the government's interest is further diminished where, as here, Petitioner was already found appropriate for release and has complied with the conditions of his release.  *R.D.T.M.*, 2025 WL 2686866 at *6.  "The government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions.").  *Hernandez*, 872 F.3d at 994.

Upon consideration of the *Mathews* factors, the Court finds Petitioner was entitled to notice and a hearing before a neutral arbitrator prior to his detention.  He received neither.  Respondents therefore violated Petitioner's due process rights.

**IV.   CONCLUSION**

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus.  (ECF No. 1.)  IT IS HEREBY ORDERED:

1.   Respondents must IMMEDIATELY RELEASE Petitioner from custody under the same conditions he was released prior to his current detention.  *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").  At the time of release, Respondents must return all of Petitioner's documents and possessions.  Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.  **Respondents must file a notice certifying**

**compliance with this provision of the Court's Order by March 10, 2026.**

2.     Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence before a neutral decisionmaker that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.

3.     Respondents' Motion to Dismiss is DENIED as moot.  (ECF No. 7.)

4.     The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: March 6, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

7